Thank you, Your Honor. May it please the court? The court is ready. I'm James Tanford. I'm appearing for the appellant Orion Wine Imports, and we would reserve two minutes of our time for rebuttal. Orion has challenged the constitutionality of provisions in the California ABC Act, which prohibit out-of-state distributors from delivering wine directly to retailers and requires that such deliveries must originate from in-state locations only. The district court dismissed the complaint for a lack of standing, even though the complaint alleged a concrete injury. Orion goes through the details of the specific transaction that it transaction was the law that made direct shipments illegal and that indirect shipping would raise the price and therefore was not feasible. The court focused on the third prong of standing, redressability, and it ruled that Orion's injury was not redressable because even if the court struck down the provision directly banning interstate shipments, other provisions in the ABC Act would in combination indirectly prohibit them. The district court acted sua sponte without the benefit of full briefing, and in the process it misunderstood both the ABC Act and Ninth Circuit precedent on redressability. The Act itself has 697 interrelated sections, and it is very difficult to read. The section primarily relied on by the district court was not a regulatory provision, but it was a definition. In and of itself, it contained no regulation, no prescriptive language, no prohibition against interstate shipping. The court thought, and the state now argues, that because one of the definitions of importer is the first person to receive a shipment of wine from out of state, then a retailer receiving a shipment from Orion would somehow be transformed into an importer, would need an importer license, and that its statutory authority as a retailer to receive shipments from distributors would be nullified. This interpretation of a definition in the ABC Act is foreclosed by California's own precedents on how statutes are to be interpreted. First of all, it prohibits construing one law, if possible, so as to nullify another law, but that's the argument that they're making. This definition of importer would nullify the law giving the retailer, the poorhouse, its statutory rights. If it is not possible to avoid a conflict, then California says that the more specific law controls over general laws like definitions, and the more specific law is the one that sets out the rights and responsibilities of the retailers. Even if the definition of importer could somehow be transformed into a regulation indirectly prohibiting wine distribution separate from the direct prohibition found in section 23-661, it would not defeat redressability. Under California's Sea Urchin Commission versus Bean and other cases, an injury is redressable if the plaintiff alleges it will take specific future action if a statutory barrier is removed, and the state official responsibility for enforcing that barrier is a party and can be enjoined from doing so. The complaint clearly alleges that Orion will take specific future actions by obtaining the necessary licenses. It's in the business. It will market and sell its wine distributed to retailers, and this is an ABC provision, and the defendant is the director of the ABC and can be enjoined from enforcing the law that creates the barrier. The core of the state's argument that remains is that the injury is still not redressable because other barriers would remain. Other ABC laws would continue to indirectly prohibit Orion from delivering wine to retailers. That argument is valid, and it must be enforced by a separate agency whose officials are not before the court and would not be subject to the court's order. Neither criteria is satisfied here. With respect to validity, if the district court were to rule on the merits that prohibiting interstate shipment of wine to a retailer violated the Commerce Clause, then a second law also prohibiting interstate shipment of wine to retailers would be similarly invalid. Two wrongs cannot make a right. With respect to independence, a series of cases from the Supreme Court and this circuit hold that a separate statute can defeat redressability only if it is enforced by a different agency, not a party, not subject to an injunction. That is not the case here. All of these provisions are enforced by the director of the banning direct distribution violates the Commerce Clause. It has broad discretion to craft the terms of an injunction to make its ruling effective. The court can enjoin the defendant from using the other sections of the ABC Act as an excuse to continue to ban direct shipments after the court just ruled that the ban was unconstitutional. State officials are not free to do indirectly that which they are prohibited from doing directly, and the district court is fully empowered to prohibit any such transparent attempts to circumvent its ruling. The injury is redressable, and Orion has established standing, and the case should be remanded so it can proceed on its merits. If there are no questions, I will take my last two minutes and save it for about. Thank you very much, counsel. Ms. Beasley. Good morning. May it please the court, Deputy Attorney General Lakeisha Beasley on behalf of Director Applesmith. Before I begin, I would like to reserve three minutes of my oral argument time for amicus curiae, which this court previously granted them leave to participate in Watch your clock. Thank you, Your Honor. The plaintiffs in this case did not adequately plead article three standing and as such do not have a justiciable case or controversy, specifically with respect to the limits of this case. This court has previously held that is the core administrative law principle that an agency may not rewrite clear statutory provisions in order to accomplish an interpretation out of convenience, and that is what the plaintiffs are asking for in this case. Now, with respect to the operative complaint, the third amendment complaint only alleges a single injury. That injury is based on discussions that revolved around a single sales transaction with Support House, a licensed California retailer located in Truckee, California. Business discussions between the plaintiffs and the courthouse fell apart in the summer of 2018, and the operative complaint does not specify that section 23661, the sole statute challenged in the operative complaint, is the reason that that sales transaction did not occur and that neither the poor house nor Orion took any steps to consummate that business deal. So, counsel, aren't there a few workarounds if Orion Wine wanted to send its wine directly to poor house? Couldn't poor house get an importer's license? In this case, your honor, the wine, the poor house is a licensed retailer and the obligations, responsibilities, and limitations that pertain to their status as a retailer are very specific, and they do not... Under this regime, you can't both be a retailer and an importer. You have to be one or the other. Based on the facts of this case, that is correct, your honor. The poor house, as alleged in the complaint, is a licensed retailer, and there are no facts suggesting... An importer and a retailer, a licensed importer and a licensed retailer. That is correct. That is correct. With respect to wine that is imported into California, and that's due to the three-tier structure that generally prohibits vertical integration, and so distinct licenses are provided for a manufacturer's tier, the wholesaler importer tier, and the retailer tier. Okay. So, go ahead and continue. And on that note, with respect to the poor house, the operative complaint specifically alleges that they are a licensed retailer, and as such, do not have the ability to serve as the first recipient of wine imported into California. And the complaint does not allege that either the poor house or any other party has taken steps to change their legal status under the ABC scheme. Now, that creates an issue because the limits and obligations on the poor house as a retailer specifically preclude the ability for the proposed direct-to-retailer sales transaction to occur. The poor house simply cannot serve as the consignee or the first recipient of wine that is imported into California. Separately... Yes, your honor. The poor house went out and got itself an importer license, no problem, correct? Well, if the poor house, your honor, went and decided to convert from a retailer to an importer, I'm not sure that the facts alleged in the complaint would be relevant because deal discussed... One can't be both a retailer and an importer? That is correct, your honor. Relatedly, common carriers are also an independent entity which would preclude the ability for the direct-to-retail shipment to occur as alleged in the complaint. There are separate regulations that are not challenged in this lawsuit that determine whether or not they could actually effectuate the direct-to-retail transaction that Orion has alleged in its complaint. For example, a common carrier prior to turning over a shipment of imported wine to a consignee must see the recipients either their importer's license or their customs broker's license. And if the recipient does not share their license or demonstrate that they have the appropriate licensure to the common carrier, the common carrier must immediately notify the state. And shipments that cannot be delivered to a rightful or proper recipient must be forfeited to the state within 10 days. And so again... May I ask you another question? So would Orion Wine have standing if it challenged the entire three-tier system? Your honor, it's unclear because I can't imagine a situation in which they would have an injury in fact based on discrimination. Well, their injury is that the increased costs that the three-tier system imposes on out-of-state manufacturers and distributors of alcoholic beverages in California. That's the injury. So if they wanted to redress this injury, they would have to challenge the whole three-tier system, right? Possibly. But again, they would have to have a specific injury and allege discrimination adequately. And based on the facts alleged in the operative complaints in the briefing in this case, we are far from that. For example, in the opening brief, Orion concedes that it does not have to be a resident in order to obtain the importer's license or a wholesaler's license. So as it I can't imagine a situation in which they would allege facts sufficient to state a case that meets the minimum and irreducible jurisdictional requirements of Article 3 standing of injury in fact causation and redressability. Your position, the state's position, is that no out-of-state distributor or manufacturer of alcohol has standing to challenge any part of California's three-tier system of regulation of alcoholic beverage distribution? Not at all, Your Honor. That is not our position. We do agree that any valid challenge of any provision of the ABC system is challengeable based on adequate facts and an adequate complaint. But that is not the case here, unfortunately. And we must deal with the facts in the manner that they are presented. And specifically with respect to Article 3 standing, of course, this Court has held that standing is assessed based on the facts as alleged in the complaint. And in this case... We're going to give amicus three minutes. Now they have two. Pardon, Your Honor. Thank you. Good morning, Your Honor. May it please the Court. First, can the Court hear me? Yes, we can hear you. I'm Robert Brundage of Morgan Lewis and I represent Amicus Curiae California Beer and Beverage Distributors. And I'm presenting the argument for both amici. I will not go through the whole litany of why plaintiffs lack standing, but I will first just give a quick overview and then try to respond to questions that the Court that seems to have on its mind. So the reason, the basic reason that plaintiffs lack standing is that the poor house doesn't have an importer's license and it can't get one. Mr. Tanford admitted in the District Court that the poor house does not have and cannot get an importer's license. And the reason that it cannot is that it has a retail license and it is barred by statute from obtaining an importer's license. And if the Court wants to see the 5505, it is statutorily barred from obtaining an importer's license. Second, the Court asked whether Orion would have standing if it challenged the whole statutory system. Orion gave up that challenge in the District Court, Your Honor. It specifically said in response to our... That doesn't answer my question, though. I understand on the facts of this case, it decided to stand on the complaint. I'm saying hypothetically, they have standing if they challenge the entire three-tier regime. They would get past the bar to standing that we raised. I don't know as I sit here whether there would be other standing problems, but there's a reason that they didn't make that claim in the District Court. The U.S. Supreme Court has repeatedly said that the three-tier system is unquestionably legitimate. That claim would lose if they brought it, if they tried to challenge the whole system. And then once it lost and they were back to challenging just 23661, they would lack standing again for all the reasons that are set forth in the District Court's order and our brief and the Attorney General's brief. Mr. Tanford also said that an injury is redressable if the plaintiff alleges that they will take specific action. That runs headlong into the U.S. Supreme Court and Ninth Circuit's case law, cited in our brief, such as McConnell v. SEC, the San Diego gun rights case. There are several Ninth Circuit cases that hold that where a different law that's not challenged bars the plaintiff from doing what they want to do, the plaintiff lacks Article III standing. It doesn't matter how much they would like to do it. If another law that's unchallenged bars it, they can't do it anyway, no matter what the court does with the lawsuit in front of it. Mr. Tanford's response to that is to say, oh, well, the law has to be enforced by a different official. The cases he cited in his brief do not say that. If the court would like to look, we respond to that at page 33 of the amicus brief. But none of the cases that Mr. Tanford has cited for that proposition. And it doesn't make any sense. If you have a law that's unquestionably valid and unquestionably forecloses the plaintiff from doing what they want to do, regardless of the outcome of the lawsuit, why would the plaintiff have Article III standing just by the happenstance that that law is enforced by the same defendant that the plaintiff is already suing? What would matter would be if the plaintiff claimed that that law was also unconstitutional and that claim had merit. Then that roadblock would be removed. But just saying, oh, this other law is enforced by the same defendant doesn't get the plaintiff anywhere, and the cited cases don't say that it does. And in fact, the cases that we cite in our brief, some of them would have had to come out the other way if Mr. Tanford's version of the law were correct. There are several cases that we cite in our brief, including both from this court and from the D.C. Circuit and at least the 10th Circuit, where different provisions of the same statute enforced by the same defendant. One validly prohibited what the plaintiff wanted to do, and the other was challenged, and the appellate courts uniformly said no standing. And with that, I'm well into my time, and the court has been indulgent. Yes, you are, counsel. So thank you, and we will hear from Mr. Tanford. Thank you, Your Honor. Several points. One is their continual reference to the three-tier system. California, in fact, does not have a three-tier system for wine. Its three-tier system statute applies to spirits only, and wine may be distributed by the wineries, the manufacturers, directly to retailers and directly to consumers. So they don't actually have a three-tier system for wine, and that's the only issue in this case. The statement by that, you know, this case was limited to a very narrow challenge to one specific statute is actually misleading. In four places in the complaint, paragraphs 27, 38, 43, and the but also about the statutory scheme, the licensing scheme as a whole that applies to direct shipping. It's not challenging any other parts of the ABC Act, but it does mention several times that it is complaining about the statutory scheme that prevents it from shipping directly. In any event, if over a year ago when a complaint was drafted, the party failed to specify all of the relief, that doesn't bind the district court. The scope of equity of the injunction is a matter of equity. The judge has a broad scope of discretion to impose terms that would make his order effective, and that includes deciding on the injunction only after all the facts have been heard. This is on the pleading stage, not a decision of standing after all the facts have been heard. And Are you asking for a remand so that you can continue the complaint? We're asking for a remand. We don't think an amendment is necessary. We believe the complaint adequately challenged it. So there are no additional facts that you could allege which would satisfy the state's reading of the ABC? No, apparently the only facts we could add would be to name the statutes by number rather than just talk about the statutory scheme. That we could do, but it seems an unnecessary step. And finally, if I may, all the discussion about a retailer only being able to get wine from an importer, it can't be an importer. Common carriers need receipts and things from importers. The complaint clearly alleges that Orion would get the importer license from California if it were allowed to act on the same basis as a California importer. It would then be the importer from whom the poorhouse could get its wine. It would be the supply the bill of lading to the common carrier so that we believe that it is adequately established standing and that the matter should be remanded for further proceedings on the merits. Thank you. All right. Thank you, counsel. Orion Wine versus Apple Smith is submitted.
judges: Wardlaw, Bea, Cain